Good morning, Your Honors. Matthew McHugh for the Relators. I'd like to reserve two minutes. Also with me today, Your Honors, are Attorney Robert Ross and Stephen Cherubin from the Attorney General's Office. I'll be splitting time with them. I'll be going for eight minutes initially, and they'll be going for five. Your Honors, once again before you is a False Claims Act case that raises a fundamental question of what constitutes fraud under the False Claims Act. And this issue has been before you now multiple times over the past five years, from Judge Stahl, your decision in Laughran, from Hutchinson, and all the way through Amgen and Brigham and Women's. Again, the fundamental issue is back before you. In this case, we have a situation where a child, Yruska Rivera, received woefully deficient health care from Arbor Health Care in Lawrence. She was treated by counselors who had no licenses whatsoever, who were not supervised. She was prescribed medication by a nurse who was not supervised by a psychiatrist for a condition that was diagnosed by an individual who had no license, no qualification whatsoever to make a psychiatric diagnosis. She was treated during a period of time when no qualified psychiatrist was supervising patients or staff at Arbor. So under these circumstances, the fundamental question is, is Arbor entitled to be paid by MassHealth for this type of treatment? Judge Woodlock concluded, yes. The issue before you is examining that decision. So what is a False Claim for purposes of the False Claims Act? We look at the statute. The statute requires a False Claim. What does that mean? A False Claim is a claim that is possible to prove true or false. In this case, the allegation is that there was a series of regulations that Arbor agreed to comply with, had to comply with, to be able to participate in MassHealth, and I've cited them throughout the briefs. When they submit a claim for reimbursement, they implicitly represent that they are in compliance with quality of control health care regulations. When they submit a claim for payment when they're not in compliance, that is fraud. That is capable of being proven true or false, and that is falsity. When you say quality of control provisions, that's an important qualification on your argument? In other words, you're not arguing that every violation of every reg is a false claim if they're not in compliance? Absolutely not, Your Honor, and I shouldn't say quality of control. You mean my narrowing is what you mean to make? Correct. I am not. Where do you get that quality of control test? Well, I shouldn't say quality of control. I'm talking about quality of care. Yeah, quality of care. Where do you get that from? From the regulations themselves. Okay, so your approach is we go regulation by regulation trying to figure out whether that regulation is the kind of regulation on which payment turns. Well, not quite, Your Honor. What I am saying is that if you have a regulation that is capable of being proven true or false, are you in compliance with that regulation? A regulation requiring a board-certified psychiatrist to supervise care, that is a regulation. In this case, there was no board-certified psychiatrist supervising care. I understand that. I guess what I'm asking, there could be many regulations. Correct. Some of which you're out of compliance with. Correct. At the time you asked for payment, right? Correct. Is that sufficient in and of itself to show if they can find any regulation you're out of compliance with, therefore you've made a false claim? No. Okay, so how do we know which regs count for purposes of showing that you've made a false claim and which ones don't? Because the world being what it is, the regulations being as many as they are, the odds that you can find some out of compliance are high. Absolutely. Okay, you're not making that broader claim, so how do we know how to narrow it, which regs count and which don't? Materiality. And Judge Saul, in his decision in Loughran, focuses on materiality. And what is that? And that is the challenge that I'm asking the court to focus on. Materiality is the essence of falsity under the False Claims Act. You have to have falsity first. Did you violate a reg? Okay, in my brief, I talked about DPH went in and confirmed my client's allegations were in fact true. They found minor violations, like you don't have enough chairs in the waiting room. And they found substantive violations, like no psychiatrist supervising care. Okay? Is the chair violation material to the reimbursement decision? Is it capable of influencing the reimbursement decision? I would concede no. But is a violation of a reg requiring supervision by a psychiatrist, is that capable of influencing the payment decision? Absolutely yes. Right, but since we can't just ask you every time we have to make that decision, what drives our assessment of when we're dealing with a reg that is the kind that grounds a False Claims Act and when there's a violation of a reg that is not the kind? Right. Well, first of all, it's a fact-intensive inquiry. So at the 12B stage, I need to plead with specificity materiality, which I have done. I've pleaded with materiality. I've pled that Arbor would not have been paid had MassHealth known about these allegations. But the real determination is fact-intensive, which requires moving beyond the 12B6 stage and getting into discovery. And the bottom line, talking to MassHealth and asking them, if you had known, assuming these facts are true, would you have paid the bill? Would that have been capable of influencing your decision on the bill? That is the fundamental issue. But when the courts look at these questions through the lens of 12B6 and make decisions based upon categorical boxes like condition of payment or condition of participation, we're missing the big picture. We're missing the potential that there is broader fraud out there than analysis that focuses on these categories allows us to reach. Before your time is up, what's the problem with this, whether it's a subsidiary or that whole argument that's raised that this was a subsidiary, there's an overriding parent, and if the parent was properly supervising its people, is that enough to say that, therefore, that supervision falls to the subsidiary? Well, I submit to you it's a red herring, Your Honor. I have been focusing the case on Arbor Healthcare, right? Universal, UHS is the parent, Arbor is the satellite. This is where my client was treated. This is where all these violations occurred at the satellite. The satellite is responsible to supervise their own people. Now, you can parse this. Does the satellite submit the bill or does the parent submit the bill? I don't know the answer to that question. But I submit to you that the satellite can't say, oh, well, it's their problem. It is the satellite's problem. The satellite's clinical director, Mr. Kienle, was responsible for supervision. He cannot pass the buck. Well, you have two different regs that you referenced. There's a supervision reg. Correct. And then there's a separate one that is the qualifications of a supervisor, a separate reg. Correct. That qualifications of a supervisor reg, as I read it, refers to a center. Correct. What's a center? The center is the satellite. You might think the satellite is not the center because it's called the satellite. So how do we know what the center is and how do we know it's every office? Well, what we do know from the regs is they distinguish between these different types of satellites, autonomous or dependent. That's another issue is that without discovery I can't specify exactly what they are. However, under either type of clinic, either type of autonomous or dependent, people have to be supervised. That's the supervision reg. Right. I'm asking about the qualifications of the supervisor, which is a separate reg. Well, the qualifications, I understand, Your Honor. And that goes to it's the same answer because if you're autonomous or dependent, your care still has to be supervised by a more certified psychiatrist. Well, but the concern would be on a dependent satellite that we might just look to the center. As long as there is a qualified person at the center, that's enough. It wouldn't mean you couldn't bring the supervision claim, but it would mean that the claim would be limited so that you couldn't bring the failure to have a qualified supervisor because that just may have existed at the center. I understand, Your Honor. But when the Department of Public Health went in and did their investigation, they asked who was in charge. The person who stepped up and said, I'm in charge is Dr. Gattacollis, who then admitted, I don't supervise care. I only get involved when people ask. They asked, who is responsible for supervising the counselors? Mr. Keelowain steps up and says, I'm responsible. And then he concedes, oh, I didn't know they were supposed to be supervised. I didn't know I was supposed to document it. There's no reference to, oh, they're actually supervised down the road at the parent. There's none of that. It's all referencing the satellite and who was in charge at the satellite. Your time is up, Mr. Keelowain. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. My name is Bob Ross. I'm counsel for the amicus of the Commonwealth of Massachusetts. And I would like to thank the Court for allowing me the opportunity to participate in oral argument today. The Commonwealth believes strongly that the lower course decision is sharply at odds with the language of the False Claims Act and the prior decisions of this Court, which reject non-statutory criteria and categories and instead focus on the statutory elements of falsity, materiality, and scienter. This Court has repeatedly interpreted the language of the False Claims Act to be applied broadly and in accordance with statutory language in both the Hutchison and the Brigham and Women's cases. This Court explained that the False Claims Act employs a consciously broad definition of a false claim but narrows the statute's reach by applying the elements of materiality and scienter. In adopting this approach, this Court has cited approvingly to the SAIC case from the D.C. Circuit. There, the contractor advocated for the exact same approach that the lower court adopted here, that a condition of payment also had to be expressed. The D.C. Circuit rejected that argument, and this Court should do the same. The district court here looked for labels to determine falsity in disregard of this Court's acknowledgment of the statute's consciously broad definition of a false claim. The judge used the distinction between requirements labeled condition of payment and condition of participation to judge the validity of this complaint. That test is misguided. To the extent that this Court and others have required a showing of something labeled a condition of payment, those have amounted to nothing more than a showing of materiality. That the noncompliance with the condition is capable of influencing the government's decision to pay. This explains why the trial- Can I ask, there's a reg that I think you're relying on which suggests that any violation that occurs is something you could withhold payment for. That's correct. Okay, so is it your position that if a private relator can find any- or someone suing, right, on behalf of- can find any out-of-compliance, any instance in which there was some regulatory violation, that demonstrates that they made a false claim, and then we just go into litigation on whether it was material as well? That is not our position. How is it not your position, given what you just said? Because the Court also has to apply materiality- I just said, does that mean that we then have to go into litigation on the fact question of whether or not that was material? It does not mean that, because this Court and the lower court employs Rule 9b with which to judge complaints. And as everyone here acknowledges, that requirement of pleading with immateriality. And I would add, with respect to that regulation, it is an example of why the trial court's search for labeling something a condition of payment is misguided, because everything under that regulation is arguably a condition of payment. Well, here's why. Tell me what's wrong with this way of reading that reg. It's not a condition of payment. That reg simply says that it may be the case that the government will choose to deny payment. It doesn't mean you're not eligible for payment. Up to the government to decide. Sometimes there are things in which you are not eligible for payment. The government would be unable to pay you if it wished. It has no discretion not to. The way that reg is written is, they may withhold it if they choose. Other of the regs, such as the reg on the supervision, suggests that baked into the reimbursement are the costs of the supervision. In that instance, that's very different than simply it's possible that we might withhold it if we choose to. And the reason I say that is because when I submit a claim for reimbursement, there's no way the institutions can know whether they're out of compliance in some respect. And to say just because they filed a claim for reimbursement, they made a false statement, if it later turns out there was some error, strikes me as not how the world operates. So where is that wrong? What's wrong in that analysis? That regulation illustrates why the district court's search for a label of something called a condition of payment is misguided. Instead, the trial court should have evaluated, the relator presented some evidence in the Second Amendment complaint, the trial court should have evaluated whether the regulatory violations that the relator cited could have influenced the government's payment decision. And in our brief... That reg, if it's a could-have test, that reg suggests under the reg, does the government have the authority to withhold payment for any violation? Yes, it does. Well, then every violation is false. Every submitted reimbursement, where they can find a violation, is both false and, on your view, subject to withholding. It is false. That does not mean that it's material. Right.  And you say that's an unlimited discretion because the reg makes clear they can withhold it for any violation. So it would be always material on that theory. But there are many circumstances, some of which are in this case. You can evaluate other circumstances, such as other regulatory language. Perhaps the government agency has issued advisories to people. Perhaps it is known whether the government has in the past held back payment. We provided a non-exhaustive list of sources, knowable sources of information that would illustrate materiality in this case and in any False Claims Act case. And many of those sources are readily available to people in advance of filing a complaint. And our point is this. The court should apply the statute according to its terms. A requirement for a condition of payment is not in the statute. Instead, now, under the statute as amended, the statute includes expressly a requirement of materiality. This court in the past has rightly focused on that. What's your test for materiality? Capable of being withheld? It is this court's test and the statute's test now explicitly that it is capable of influencing the government's decision to pay. That's the language that's used, that this court's previously used in Loughran. It's also the language that appears in the statute as amended. And you don't literally mean capable. You mean reasonably likely to? At the 12B6 stage, capable is the word that the statute uses. Well, I'm going to tell you what you mean by it, how you think we should interpret that word because it's not self-evident. Capable means literally it would be law to me, lawful to withhold it. You say that that's true in every violation. But then you say actually you're supposed to look at this list of advisory things. Well, why are we supposed to look at that? Is that because actually capable in your reading means reasonably likely to lead to a decision to withhold? Reasonably likely to lead to a decision to withhold is, in our view, a fair interpretation of the statutory requirement that it be capable of influencing the government's decision to pay. Thank you. Good morning. I'm Mark Perlstein. I represent the Defendant Universal Health Services. I want to begin with the question that Judge Barron posed, which is how do we know which regulations count? The methodology suggested both by relators and by the Commonwealth of Massachusetts suggests this sort of multifactorial test that can only be with a focus of materiality. But the case law from the First Circuit makes it very, very clear that that's simply the wrong approach. To begin with, their arguments are based on a false premise. It is true that in the government contracting area, in the health care area in particular, there are many people with many grievances that get adjudicated in a variety of ways. The False Claims Act is not the sole source of the remedies for those people. And indeed, this Court's decisions in Takeda and in the Ross case in particular make it clear that the predicate for False Claims Act liability is a false claim for payment. So to come back to Judge Barron's question, how do we tell what regulations count? And it's not by trying to speculate about what a reasonable person or a reasonable payer might conclude could potentially matter. Wouldn't a reasonable payer want to understand that the standard of care, which is set out in the regulations, has been reasonably met? And if the regulations set forth a standard that people are supposed to have certain credentials, they're supposed to be supervised, and there is a claim at 12B6 that none of this happened, that the people were A, not qualified, and B, not supervised. Why isn't that enough? This Court considered and rejected a similar argument in the Amgen case. In that case, the relators and the plaintiff intervenors, including the Commonwealth of Massachusetts, argued that Anti-Kickback Act violations were such a well-known source of fraud that, as a consequence, they ought to be recognized as a condition of payment. And what this Court held was that that was the wrong analytical approach, that the way to determine whether or not a precondition for payment arose out of compliance with an Anti-Kickback statute was to look at the language of each of the, in that case, seven state Medicaid program regulations to determine whether or not those payers had identified compliance with the Anti-Kickback statute as being a precondition for payment. So it's your position that each one of these regulations or statutes must say in the preamble, by the way, in order for you to get paid, you have to do all of these things. Actually, that's not our position, Your Honor, and it's not the position that you just said. No, because what this Court did in Amgen was to look at those seven state Medicaid regulations and provider agreements and concluded that in the case of the Georgia agreement, it was not a precondition of payment, notwithstanding the fact that, as they argued, as the relator argued in that case, the Georgia Medicaid agency, the payer, likely would have been extremely interested in knowing that claims resulted from alleged kickback activity. In this case, what Judge Woodlock did was both look at the preamble, which identified in Section 134.29, that those describe generally conditions of participation, but he didn't stop his analysis there. He reviewed each of the regulations within that body that had been identified by the relators, and he identified within them two that were also conditions of payment. And that gets back to Judge Barron's question. And the answer to the question is the task of the district court judge was to identify what the payer determined was a prerequisite for payment. And you say the label does not determine that? The label doesn't determine that. It's not necessarily positive. It doesn't determine that. Okay, so put aside the label. The problem that I think you need to address is the reg that the district court didn't seem to factor, put much weight on, but I don't see why he didn't, which makes it clear that the reimbursement amount is calculated in consequence of the supervision that's required. How do you reconcile that reg with the conclusion that the payer doesn't care if there's no supervision when they're setting the reimbursement rate on the assumption that, in fact, there was supervision? I respectfully believe that's a misreading of the regulation. The regulation is entitled, and you're talking about 429.408. I'm sure I am. You are. And the regulation is entitled maximum allowable fees. And what it says, rather than creating a condition of payment, what it says is if you, the provider, are furnishing and billing for a service, for therapy, you're not allowed to separately bill for services that are attendant to the provision of the therapy. So, for example, there are, I believe, four examples that are identified in that regulation, and they include you can't separately bill for supervision, you can't separately bill for record keeping, you can't separately bill for telephone communications, and you can't separately bill for the cost of registering patients. I believe that the district court judge was correct in concluding that not only is it not a condition of payment, but that there was no violation of the regulation alleged, because it wasn't a regulation that authorized payment for supervision. It didn't say anything about that. And, in fact, I believe the only way you would get to a violation of 429.408 is if the defendant That's not the point. That's how he addressed it, was whether you violated that reg. My point is you say that you have to look to see if, regardless of label, the regs themselves suggest that the payer wanted you to be telling the truth when you made the request for payment. And putting that reg in play, just the text of the reg, you don't have to go look at advisory guidelines or make a guess about what MassHealth would do. The regs suggest that they are telling people requesting payment that the reimbursement rate is calculated in consequence of the required supervision. And doesn't that reg at least show that much? I do not believe it does, Your Honor. And there's no reg that suggests that? There is no reg that suggests. And why does the reg that we were just talking about not suggest that they are calculating the reimbursement rate on the basis of the supervision, the cost of the supervision? It's at least an equal inference, if not a stronger one, that they've simply concluded, in effect they've said, we're not reimbursing at all for these attendant services. So your argument is that supervision, none of these things actually count, that the reality is that the state doesn't care whether there's supervision or whether the people have the credentials to perform the job that they're supposed to be performing. No, that's not. Well, that seems to be the logical conclusion to your argument. No, but it's viewed through the lens of the False Claims Act. What I'm saying is those are conditions of participation, and the state clearly regulates. So the states could say, you can't participate any longer, because you don't do any of the things which the regulations say, but for a false claim, that's a different animal. So that's true, but part of the reason for that is that the condition of participation process is a very different one from the condition of payment process. The conditions of participation are enforced through a survey process. It's an iterative process, a back and forth between the government regulator not acting in an enforcement capacity and the provider to improve the quality of care. Respectfully, it's not accurate to say that the government doesn't care, but what we're saying here is that in this case, given the comprehensive set of regulations promulgated by MassHealth, MassHealth has made determinations as to what are conditions of participation, what are conditions of payment. Is there any condition of payment under the regs? Oh, sure. Give an example of one. Of course. So Judge Woodlot, well, there are two actually in the regs. There are 429.439 and 429.40. 440 is not implicated. Okay, so 439, that's a condition of payment, and why do you concede it is? Because it says it's just in terms of it being reimbursable if the following conditions are met. So it's the language itself supports it being a condition of payment, and Judge Woodlot so found. And suppose there was no label saying that? Well, if. Or is it just because it used the word reimbursable? Well, or other language that indicates what the payer's intent is. But in this instance, it was clear. Now, the failure. So is that your intent? You have to have clear language showing a required payment in order? As opposed to label, yeah. There's got to be a label. And we can't infer that from another reg that doesn't. In other words, there's no ability to imply that if the language itself isn't on the face of the reg speaking in terms of payment. So I think that's generally correct, but it certainly is correct here where MassHealth, the payer, knew how to use language to categorize something as a condition of payment. And just on that score, what do you do then with the reg that the State Attorney General's office identifies, which could not be clearer, that they may withhold payment for any violation? So there are two. How is that not a condition of payment, just on your own test? So that's, of course, in the general MassHealth conditions of payment. So it is a condition of payment. I agree with you, though. It doesn't render a provider ineligible for payment. But the court doesn't need to even address that issue because it wasn't raised by the relators below. It wasn't raised by the Commonwealth below. And it's clearly been waived under the case law, beginning with Takeda, Sturm, Ruger. And amicus cannot simply come into the case at the 12th hour and inject an issue that was at no time presented to the district court. Well, that would allow us to ignore it, but it doesn't require us to. After all, we want to get the law right. Right. But sort of the two answers to it are Judge Barron's observation, and I think the second observation is that that regulation has to be read in the context of all of the other MassHealth regulations. And it simply makes no sense to construe it that broadly, to construe it in that manner, in instances where MassHealth has specifically spoken to whether or not other regulations are conditions of payment or conditions of participation. Well, why wouldn't it go the other way, that labeling something a condition of payment is a way of signaling it is not a condition of participation? Well, the short answer is... So you might want to specify this is the kind of thing that if you don't follow, you're out of the program potentially, whereas these ones, we're not saying that. But in the case of 439 and 440, that is precisely what MassHealth said, because those are regulations that were both conditions of payment. Well, nothing would preclude you from having both, but I'm just saying given the dramatic consequence of violating a condition of participation, the fact that some things are labeled as such necessitates labeling other things not as such. But that doesn't, therefore, mean that when they use condition of payment, they're necessarily saying that any time we don't mention that, it's not a condition of payment. They might just be highlighting this is not a condition of participation. No, because I respectfully, Your Honor, I think that because, in fact, if you use the regulation that the Attorney General is now invoking, a violation of a condition of payment would give rise to False Claims Act liability, which in turn would enable a suspension of payments and a host of other sanctions that are available under that regulation and under the MassHealth regulations. So I don't think it creates a lesser sanction. It's just another path to a remedy for MassHealth. Thank you. Okay. Can I ask you one more, I'm sorry, about the center? Yes. How do you read that reference to the word center in the qualifications reg? I understand you don't think it's a condition of payment at all, but assuming that we thought otherwise, how do you read what center means? Yeah. I think center is a reference to the parent center, not to the satellite. And why? Because in context, the regulations speak of the satellite as something different from the parent center. And so, at least in context, the use of the word center seems strongly suggestive of the notion that it's Is there a definition in the regulated health? There is not a definition of center. Thank you. I'd just like to make three brief points, and I appreciate your time today. First, Judge Barron, you focused on the regulation that ties supervision to payment, and that's an essential part of this claim. And counsel represented that a fair inference from that could mean that, well, we just don't bill for supervision at all. When you look at the actual language of the reg, it says, payment by the MassHealth Agency for a mental health service includes payment for administrative operations, and goes on to define administrative operations as including supervision. Second, again, Judge Barron, your concern essentially about the broad scope of the FCA, False Claims Act, and how could it be applying to everything, right? I've tried to explain how that's not the case, that it doesn't apply to the chairs in the waiting room, but it does apply to psychiatrists taking care of kids. But what is significant about this case, and I want you to focus on this case versus the kind of broader picture, is that we have a report here from the Department of Public Health that went in and found that the allegations of the relators are true. Particularly in this case, when you have that type of fact-finding, that should easily satisfy materiality, should easily satisfy falsity. If you're concerned about a slippery slope, that's not the concern here where these allegations have been proven true. And then the allegation that there was a violation? The Department of Public Health regulations mirror the regulations of MassHealth. They have to supervise the counselors. They have to have a psychiatrist. There was a report you were talking about that said the allegations were true. The allegations of what? The failure to supervise? Yes. If there was a report saying that they didn't comply with the chair regulation, that would also be true, but you wouldn't say that made any difference. No, I'm saying that's not material for false claims. Right. So the report that shows the allegations are true doesn't help us figure out whether the regulation violation is relevant or not. Right. Well, what I'm focusing on is materiality, and do I have enough evidence before the court to get past this concern of slippery slope? The last point I want to make, Your Honor, is that in this case, the regulations requiring a competent psychiatrist to supervise care does not have magic language in it saying failure to do so affects reimbursement. It doesn't have that. So under this argument, you could have a situation, which is the situation here, where a doctor is not board certified as a psychiatrist as required and has admitted to the DPH that, no, I don't supervise patient care. And under that circumstance, they're still entitled to be paid? I submit to you that's an absurd, absurd conclusion, and that's the conclusion that results from this type of categorical analysis. Thank you for your time.